IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 23-cv-14369-AMC

_____

DOUGLAS BELLEVILLE, individually and
on behalf of all others similarly situated,

                              Plaintiff,                        CLASS ACTION

v.

FLORIDA INSURANCE SERVICES, INC., a
Florida Corporation,

                              Defendant.

_____/

**<u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE
ALTERNATIVE, TO STRIKE CERTAIN IMPROPER ALLEGATIONS THEREFROM,
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

*Douglas Belleville v. Florida Insurance Services, Inc.*
*Southern District of Florida, Case No.: 23-cv-14369-AMC*

## **TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................ 1

II.    APPLICABLE LEGAL STANDARDS OF REVIEW.................................... 2

III.   ARGUMENT ................................................................................................. 3

     A.    The Entire Complaint Should Be Dismissed Under Rule 12(b)(6) Due to
          Plaintiff's Failure to Plausibly Allege Direct or Vicarious TCPA Liability.......... 4

     B.    The Complaint Should Also Be Dismissed Under Rule 12(b)(6) Because
          Plaintiff Fails to Plead Facts Supporting Other Essential Elements of His
          Claims ................................................................................................ 8

     C.    Count II of the Complaint and Plaintiff's Requests for Injunctive Relief
          Should Also Be Dismissed for Lack of Article III Standing Under Rule
          12(b)(1) .............................................................................................. 14

     D.    Alternatively the Court Should Strike Certain Improper Allegations from
          the Complaint Under Rules 12(f) and/or 23 ........................................ 15

          1.    The Allegations in Paragraphs 15, 17, 19, and 21 of the Complaint
               are Immaterial, Impertinent, Scandalous, and Unduly Prejudicial
               and, Therefore, Should Be Stricken ........................................ 15

          2.    Plaintiff's Class Related Allegations Are Facially Uncertifiable as
               Pled and, Thus, They are Properly Stricken At the Pleadings Stage ....... 16

               a)    Common Questions of Law and Fact Do Not Predominate ........ 16

               b)    The Proposed Classes Are Impermissibly "Fail-Safe." .............. 18

               c)    The Proposed Classes Are Impermissibly Overbroad ................ 19

IV.    CONCLUSON ............................................................................................... 20

Block & Scarpa Attorneys at Law
601 21st Street, Suite 401    •    Vero Beach, FL 32960    •    (772) 794-1918

*Douglas Belleville v. Florida Insurance Services, Inc.*
*Southern District of Florida, Case No.: 23-cv-14369-AMC*

## **TABLE OF AUTHORITIES**

### **CASES**

*A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*,
    2018 WL 488257 (N.D. Ill. Jan. 18, 2018) ................................................................16, 19, 20

*Aaronson v. CHW Grp., Inc.*,
    2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ...........................................................................5

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
    2018 WL 288055 (N.D. Cal. Jan. 4, 2018) ...........................................................................4, 7

*Abramson v. 1 Glob. Capital, LLC*,
    2015 WL 12564318 (S.D. Fla. Sept. 23, 2015) .......................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................................2

*Atkinson v. Wal-Mart Stores, Inc.*,
    2009 WL 1458020 (M.D. Fla. May 26, 2009)........................................................................15

*Bacon v. Stiefel Lab'ys, Inc.*,
    275 F.R.D. 681 (S.D. Fla. 2011) ...........................................................................................17

*Baisden v. Credit Adjusts., Inc.*,
    813 F.3d 338 (6th Cir. 2016) ................................................................................................17

*Balassiano v. Fogo De Chao Churrascaria (Orlando) LLC*
    2020 WL 7365264 (M.D. Fla. Dec. 15, 2020), *report and rec. adopted*, 2021 WL
    2019722 (Jan. 7, 2021) .........................................................................................................18

*Balthazor v. Cent. Credit Servs., Inc.*,
    2012 WL 6725872 (S.D. Fla. Dec. 27, 2012) .......................................................................17

*Bank v. Philips Elecs. N. Am. Corp.*,
    2015 WL 1650926 (E.D.N.Y. Apr. 14, 2015) .........................................................................6

*Barnes v. SunPower Corp.*,
    2023 WL 2592371 (N.D. Cal. Mar. 16, 2023)..........................................................................7

*Barnett v. Bank of Am., NA*,
    2021 WL 2187950 (W.D.N.C. May 28, 2021) ......................................................................17

*Barr v. Macy's.com, LLC*,
    2023 WL 6393480 (S.D.N.Y. Sept. 29, 2023)................................................................13, 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................................2

*Bennett v. Celtic Ins. Co.*,
    2022 WL 865837 (N.D. Ill. Mar. 23, 2022)............................................................................7

*Braver v. NorthStar Alarm Serv., LLC*,
    2019 WL 3208651 (W.D. Okla. July 16, 2019)......................................................................12

BLOCK & SCARPA ATTORNEYS AT LAW
601 21ST STREET, SUITE 401   •   VERO BEACH, FL 32960   •   (772) 794-1918

*Brownlee v. Allstate Ins. Co.*,
   2021 WL 4306160 (N.D. Ill. Sept. 22, 2021) ...........................................................4

*Bryant v. King's Creek Plantation, LLC*
   2020 WL 6876292 (E.D. Va. June 22, 2020) ...........................................................19

*Burdge v. Ass'n Health Care Mgmt. Inc.*,
   2011 WL 379159 (S.D. Ohio Feb. 2, 2011)...............................................................12

*Callier v. Nat'l United Grp., LLC*,
   2021 WL 5393829 (W.D. Tex. Nov. 17, 2021)...........................................................14

*Canary v. Youngevity Int'l, Inc.*,
   2019 WL 1275343 (N.D. Cal. Mar. 20, 2019)...........................................................14

*Carson v. Home Depot, Inc.*,
   2022 WL 2954327 (N.D. Ga. July 26, 2022)...............................................................5

*Chaparro v. Carnival Corp.*,
   *693* F.3d 1333 (11th Cir. 2012) ................................................................................3

*Charvat v. DFS Servs. LLC*,
   781 F. Supp. 2d 588 (S.D. Ohio 2011) .....................................................................12

*Charvat v. GVN Michigan, Inc.*,
   561 F.3d 623 (6th Cir. 2009) .............................................................................12, 13

*Charvat v. NMP*,
   656 F.3d 440 (6th Cir. 2011) ....................................................................................12

*Childress v. Liberty Mut. Ins. Co.*,
   2018 WL 4684209 (D.N.M. Sept. 28, 2018) ...............................................................5

*Cholly v. Uptain Grp., Inc.*,
   2017 WL 449176 (N.D. Ill. Feb. 1, 2017) ...........................................................17, 18

*Cone Corp. v. Fla. Dep't of Transp.*,
   921 F.2d 1190 (11th Cir. 1991) .............................................................................3, 14

*Cordoba v. DIRECTV, LLC*,
   942 F.3d 1259 (11th Cir. 2019) ...........................................................................14, 20

*Cunningham v. Caribbean Cruise Lines, Inc.*,
   2016 WL 7494871 (S.D. Fla. Dec. 29, 2016) ..............................................................9

*Cunningham v. Daybreak Solar Power, LLC*,
   2023 WL 3985245 (N.D. Tex. June 13, 2023) .............................................................8

*Cunningham v. McDonald*,
   2018 WL 6737418 (M.D. Tenn. Nov. 5, 2018), *report and rec. adopted,* 2018 WL
   6198417 (Nov. 28, 2018) ............................................................................................9

*Cunningham v. Politi,*
   2019 WL 2517085 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted,* 2019 WL
   2524737 (June 19, 2019) .........................................................................................8, 9

BLOCK & SCARPA ATTORNEYS AT LAW
601 21ST STREET, SUITE 401   •   VERO BEACH, FL 32960   •   (772) 794-1918

*Cunningham v. Rapid Capital Funding, LLC/RCF,*
   2017 WL 3574451 (M.D. Tenn. July 27, 2017), *report and rec. adopted,* 2017 WL
   3776165 (Aug. 31, 2017) ................................................................................................9

*Dahdah v. Rocket Mortgage LLC,*
   2023 WL 5941730 (E.D. Mich. Sept. 12, 2023) .....................................................11

*Davila v. Delta Air Lines, Inc.,*
   326 F.3d 1183 (11th Cir. 2003) .............................................................................3

*Donaca v. Dish Network, LLC,*
   303 F.R.D. 390 (D. Colo. 2014) ............................................................................5

*Dorfman v. Albertson's LLC,*
   2020 WL 86192 (D. Idaho Jan. 7, 2020) .............................................................17

*Doyle v. GoHealth, LLC,*
   2023 WL 3984951 (D.N.J. Mar. 30, 2023)..............................................................6

*Doyle v. Matrix Warranty Sols., Inc.,*
   2023 WL 4188313 (D.N.J. June 26, 2023) ..............................................................8

*Eggleston v. Reward Zone USA LLC,*
   2022 WL 886094 (C.D. Cal. Jan. 28, 2022) ..........................................................11

*Eldridge v. Cabela's Inc.,*
   2017 WL 4364205 (W.D. Ky. Sept. 29, 2017) .................................................17, 18

*Elend v. Basham,*
   471 F.3d 1199 (11th Cir. 2006) ..........................................................................3, 14

*Fantasy, Inc. v. Fogerty,*
   984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds,* 510 U.S. 517 (1994).......................15

*Fennell v. Navient Sols., LLC,*
   2019 WL 3854815 (M.D. Fla. June 14, 2019)........................................................18

*Fisher v. Alarm.com Holdings, Inc.,*
   2018 WL 5717579 (N.D. Ill. Nov. 1, 2018) ...........................................................16

*Flores v. City of California City,*
   2019 WL 1934016 (E.D. Cal. May 1, 2019)...........................................................20

*Foxx v. Ocwen Loan Servicing, LLC,*
   2012 WL 2048252 (M.D. Fla. June 6, 2012)..........................................................16

*Frank v. Cannabis & Glass, LLC,*
   2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) .........................................................5

*Gallegos v. Roman Catholic Archbishop of San Francisco,*
   2016 WL 3162203 (N.D. Cal. June 7, 2016) ..........................................................15

*Gen. Tel. Co. of the Sw. v. Falcon,*
   457 U.S. 147 (1982)...............................................................................................16

BLOCK & SCARPA ATTORNEYS AT LAW
601 21ST STREET, SUITE 401   •   VERO BEACH, FL 32960   •   (772) 794-1918

*Douglas Belleville v. Florida Insurance Services, Inc.*
*Southern District of Florida, Case No.: 23-cv-14369-AMC*

*GeorgiaCarry.Org, Inc. v. Georgia*,
    687 F.3d 1244 (11th Cir. 2012) ........................................................................3

*Gillam v. Reliance First Capital, LLC*,
    2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023)......................................8, 9, 10, 11

*Grieben v. Fashion Nova, Inc.*,
    2022 WL 4598649 (S.D. Fla. Sept. 29, 2022) .......................................................14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..........................................................................17

*Henley v. Turner Broad. Sys., Inc.*,
    267 F. Supp. 3d 1341 (N.D. Ga. 2017) ..............................................................8

*Hicks v. Alarm.com*,
    2020 WL 9261758 (E.D. Va. Aug. 6, 2020)................................................ passim

*Hirsch v. Lyndon S. Ins. Co.*,
    2019 WL 5110622 (M.D. Fla. June 7, 2019), *report and rec. adopted sub nom.*, 2019
    WL 8370863 (Aug. 6, 2019), *aff'd*, 805 F.App'x 987 (11th Cir. 2020)........................4, 8, 18

*Hirsch v. USHealth Advisors, LLC*,
    337 F.R.D. 118 (N.D. Tex. 2020) ........................................................................18

*Hossfeld v. Am. Fin. Sec. Life Ins. Co.*,
    544 F. Supp. 3d 1323 (S.D. Fla. 2021) ................................................................4

*In re Dish Network, LLC*,
    2013 WL 1934349, 28 FCC Rcd. 6574 (2013)....................................................4, 5

*In re Rules and Regs. Implementing the TCPA*,
    30 FCC Rcd. 7961 (Jul. 10, 2015) ........................................................................5

*Jaafar Inv. Corp. v. Scottsdale Ins. Co.*,
    2019 WL 8014368 (S.D. Fla. June 7, 2019) .......................................................3

*Jackson v. Motel 6 Multipurpose, Inc.*,
    130 F.3d 999 (11th Cir. 1997) ..........................................................................16

*Jamison v. First Credit Servs., Inc.*,
    290 F.R.D. 92 (N.D. Ill. 2013)............................................................................19

*Katz v. CrossCountry Mortg., LLC*,
    2022 WL 16950481 (N.D. Ohio Nov. 15, 2022) ...............................................11

*Laccinole v. Appriss, Inc.*,
    453 F. Supp. 3d 499 (D.R.I. 2020)................................................................12, 13

*Lawson v. Life of the S. Ins. Co.*,
    286 F.R.D. 689 (M.D. Ga. 2012) ........................................................................16

*Licari Family Chiropractic v. eClinical Works, LLC*,
    2019 WL 7423551 (M.D. Fla. Feb. 16, 2018) .......................................................20

BLOCK & SCARPA ATTORNEYS AT LAW
601 21ST STREET, SUITE 401   •   VERO BEACH, FL 32960   •   (772) 794-1918

*Lindsay Transmission, LLC v. Office Depot, Inc.*,
  2013 WL 275568 (E.D. Mo. Jan. 24, 2013) ............................................. 16, 17, 18

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................... 3

*Mantha v. QuoteWizard.com, LLC*,
  2022 WL 325722 (D. Mass. Feb. 3, 2022) ........................................................... 10

*Meeks v. Buffalo Wild Wings, Inc.*,
  2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) .............................................. 5, 7, 8

*Mendez v. Optio Sols., LLC*,
  219 F. Supp. 3d 1012 (S.D. Cal. 2016) ................................................................. 1

*Metzler v. Pure Energy USA LLC*,
  2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023) .......................................................... 4

*Morgan v. U.S. Xpress, Inc.*,
  2018 WL 3580775 (W.D. Va. July 25, 2018) .................................................. 9, 10

*MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*,
  755 F. Supp. 2d 1205 (M.D. Fla. 2010) .............................................................. 16

*Naiman v. Freedom Forever, LLC*,
  2019 WL 1790471 (N.D. Cal. Apr. 24, 2019) ....................................................... 5

*Nelums v. Mandu Wellness, LLC*,
  2023 WL 5607594 (D.N.M. Aug. 30, 2023) .......................................................... 4

*New Concept Dental v. Dental Res. Sys., Inc.*,
  2020 WL 3303064 (S.D. Fla. Mar. 3, 2020) ........................................................ 17

*Newhart v. Quicken Loans Inc.*,
  2016 WL 7118998 (S.D. Fla. Oct. 12, 2016) ....................................................... 17

*Nicholas Greene v. Select Funding, LLC*,
  2021 WL 4926495 (C.D. Cal. Feb. 5, 2021) ........................................................ 11

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ............................................................................................... 3

*Pascal v. Agentra, LLC*,
  2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) ....................................................... 4

*Pepka v. Kohl's Dep't Stores, Inc.*,
  2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) ................................................ 16, 17

*Perrong v. S. Bay Energy Corp.*,
  2021 WL 1387506 (E.D. Pa. Apr. 13, 2021) ....................................................... 14

*Rahimian v. Adriano*,
  2022 WL 798371 (D. Nev. Mar. 16, 2022) .......................................................... 13

*Rogers v. Assurance IQ, LLC*,
  2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) ............................................ 8, 9, 10

BLOCK & SCARPA ATTORNEYS AT LAW
601 21ST STREET, SUITE 401   •   VERO BEACH, FL 32960   •   (772) 794-1918

*Rogers v. Postmates Inc.*,
    2020 WL 3869191 (N.D. Cal. July 9, 2020)....................................................................4, 8

*Sauter v. CVS Pharmacy, Inc.*,
    2014 WL 1814076 (S.D. Ohio May 7, 2014) ......................................................................16

*Schaevitz v. Braman Hyundai, Inc.*,
    437 F. Supp. 3d 1237 (S.D. Fla. 2019) ..............................................................................14

*Scruggs v. CHW Grp., Inc.*,
    2020 WL 9348208 (E.D. Va. Nov. 12, 2020)........................................................................7

*Sheski v. Shopify (USA) Inc.*,
    2020 WL 2474421 (N.D. Cal. May 13, 2020) ...................................................................4, 5

*Simmons v. Charter Commc'ns, Inc.*,
    222 F. Supp. 3d 121 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017) .........................13

*Smith v. Direct Building Supplies, LLC*,
    2021 WL 4623275 (E.D. Pa. Oct. 7, 2021)........................................................................5, 6

*Smith* v. *Vision Solar LLC*,
    2020 WL 5632653 (E.D. Pa. Sept. 21, 2020) ......................................................................9

*Thomas v. Taco Bell Corp.*,
    582 F.App'x 678 (9th Cir. 2014) .........................................................................................4

*Thompson v. Genesco, Inc.*,
    2024 WL 81187 (E.D. Mo. Jan. 8, 2024) ............................................................................14

*Tillman v. Ally Fin. Inc.*,
    2017 WL 7194275 (M.D. Fla. Sept. 29, 2017) ....................................................................17

*Tomelleri v. Natale*,
    2020 WL 5887151 (S.D. Fla. July 16, 2020).........................................................................3

*U.S. Diamond & Gold v. Julius Klein Diamonds LLC*,
    2007 WL 1026421 (S.D. Ohio Mar. 29, 2007)....................................................................15

*Walewski v. Zenimax Media, Inc.*,
    502 F.App'x 857 (11th Cir. 2012) (*per curiam*)...................................................................19

*Warnick v. Dish Network LLC*,
    301 F.R.D. 551 (D. Colo. 2014) ........................................................................................10

*Wick v. Twilio Inc.*,
    2017 WL 2964855 (W.D. Wash. July 12, 2017) ....................................................................6

*Wilson v. PH Phase One Operations L.P.*,
    422 F. Supp. 3d 971 (D. Md. 2019) ...................................................................................12

*Woo v. Home Loan Group, L.P.*,
    2007 WL 6624925 (S.D. Cal. Jul. 27, 2007) .......................................................................15

*Worsham v. Travel Options, Inc.*,
    2016 WL 4592373 (D. Md. Sept. 2, 2016), *aff'd*, 678 F.App'x 165 (4th Cir. 2017) .............12

BLOCK & SCARPA ATTORNEYS AT LAW
601 21ST STREET, SUITE 401   •   VERO BEACH, FL 32960   •   (772) 794-1918

## STATUTES

47 U.S.C. § 227(c)(5) ........................................................................... passim

47 U.S.C. § 227(d) ...................................................................................4, 12

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(c)(2)..................................................................... passim

47 C.F.R. § 64.1200(d) ........................................................................ passim

47 C.F.R. § 64.1200(d)(1).......................................................................13, 14

47 C.F.R. § 64.1200(f)(5).............................................................................18

47 C.F.R. § 64.1200(f)(13)...........................................................................11

47 C.F.R. § 64.1200(f)(15).......................................................................11, 19

7A Wright & Miller, FEDERAL PRAC. & PROC. § 1760 (3d ed. 2005)....................19

U.S. Constitution, Article III ..........................................................2, 3, 14, 19

## RULES

Fed. R. Civ. P. 8(a)(2) .................................................................................1

Fed. R. Civ. P. 12(b)(1)..................................................................2, 3, 14, 20

Fed. R. Civ. P. 12(b)(6) ........................................................................ passim

Fed. R. Civ. P. 12(f) .........................................................................2, 15, 16

Fed. R. Civ. P. 23 ...................................................................15, 16, 18, 20

Fed. R. Civ. P. 23(b)(3)..............................................................................16

BLOCK & SCARPA ATTORNEYS AT LAW
601 21ST STREET, SUITE 401   •   VERO BEACH, FL 32960   •   (772) 794-1918

*Douglas Belleville v. Florida Insurance Services, Inc.*
*Southern District of Florida, Case No.: 23-cv-14369-AMC*

## I.      **INTRODUCTION**

In his Complaint (*see* Dkt. 1), Plaintiff Douglas Belleville ("Plaintiff") alleges, in a conclusory fashion and without sufficient requisite factual support, that Florida Insurance Services, Inc. ("FIS") violated certain "Do Not Call" ("DNC") provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), and their related implementing regulations. His claims rest squarely on <u>four</u> ill-described calls purportedly made to his cell phone number—which noticeably is not even provided in his Complaint (even partially)[1]—without his consent. However, merely regurgitating the legal elements of a cause of action without supporting facts, like Plaintiff did here, does not remotely satisfy federal pleadings standards and cannot survive dismissal in this, or any, case. Plaintiff also cannot expect to represent two nationwide putative classes based on the facially uncertifiable allegations in his pleading. Thus, the entire Complaint should be dismissed, or alternatively the improper class and other allegations should be stricken, for several reasons:

**<u>First</u>**, the Complaint should be dismissed in its entirety under Rule 12(b)(6) because Plaintiff fails to state a plausible claim for relief under the TCPA or to allege sufficient facts supporting such a claim. To begin, to successfully plead ***any*** TCPA claim under any TCPA provision and avoid dismissal, it is well-accepted that all plaintiffs must first allege sufficient non-conclusory facts supporting the defendant's direct or vicarious liability. Here, Plaintiff fails to plead actual facts supporting a plausible inference that: (i) FIS itself, and not an unidentified third party, took the steps necessary to "physically" place the calls at issue, as required to plead direct TCPA liability; or (ii) had a common law agency relationship with any third party that did place the calls, as required to plead vicarious TCPA liability. Federal courts across the country routinely dismiss such bald TCPA claims at the pleadings stage under Rule 12(b)(6) on these bases alone. This Court should too.

**<u>Second</u>**, the Complaint is further subject to dismissal under Rule 12(b)(6) because Plaintiff fails to plead facts supporting other essential elements of his DNC claims. For example, Plaintiff does not plead facts demonstrating he actually uses his cell number for "residential" purposes, such

---

[1] Because he does not provide his cell phone number (even in part), Plaintiff has not provided FIS with "fair notice" of his TCPA claims, as required, which alone warrants dismissal of his entire Complaint. *See, e.g., Mendez v. Optio Sols., LLC*, 219 F. Supp. 3d 1012, 1015 (S.D. Cal. 2016) (dismissing on this basis under Fed. R. Civ. P. 8(a)(2) and 12(b)(6), holding that (i) "[i]n order for [a defendant] to competently answer the complaint, it is necessary that it be able to identify those calls which form the basis for its potential liability" and (ii) it was "reasonable to require [the plaintiff] to disclose in her complaint a redacted version of the phone number at issue, such as the phone number's last four digits," to provide the defendant with fair notice of her TCPA claim).

*Douglas Belleville v. Florida Insurance Services, Inc.*
*Southern District of Florida, Case No.: 23-cv-14369-AMC*

that he would qualify as a "residential telephone subscriber" within the meaning of the TCPA. Since a cause of action under the TCPA's DNC provisions can ***only*** be brought by "residential" subscribers, failure to meet this key element of his claims is likewise fatal to his entire Complaint.

**Third,** Plaintiff similarly fails to plead facts demonstrating that each call at issue, within the meaning of the statute, (i) constituted a "telephone solicitation" as required for a violation of the TCPA's National DNC Registry provisions (asserted in Count I), or (ii) was for "telemarketing purposes" as required for a violation of the TCPA's "internal" DNC rules (asserted in Count II). Courts have recognized that TCPA plaintiffs cannot merely parrot the statutory text in this regard without providing the specific content of a call and avoid dismissal of a DNC claim. This Court should reach the same conclusion here, and dismiss the entire Complaint on this additional basis.

**Fourth,** Plaintiff's "internal" DNC claim (Count II) should also be dismissed under Rules 12(b)(6) and 12(b)(1) because, even assuming *arguendo* there is a private cause of action for such alleged violations under the TCPA (which is disputed), Plaintiff fails to allege any facts suggesting that: (i) FIS did not maintain internal DNC procedures, as specified by the TCPA's regulations, at the time of the calls at issue; or (ii) he asked for his cell number to be placed on any internal DNC list and, therefore, he lacks standing under Article III of the U.S. Constitution to bring such a claim.

**Fifth,** if the Court does not dismiss the whole Complaint (and it should), it should still dismiss Plaintiff's requests for injunctive relief pursuant to Rule 12(b)(1) for lack of standing under Article III, at the minimum. In this regard, it is well-settled that, to have Article III standing to seek injunctive relief in any federal case, all plaintiffs must plead non-conclusory facts demonstrating they are at risk of a possible future injury by the defendant. Plaintiff pleads no such facts here.

**Lastly,** while the entire Complaint should be dismissed on the multiple dispositive grounds above, it also attempts to interject various immaterial and impertinent allegations from anonymous posts on third-party websites that have nothing to do with ***this*** case. Plaintiff's class allegations are also facially inadequate, such that certification cannot be granted as pled. Thus, FIS respectfully submits that the Court should nevertheless strike those clearly improper allegations now under Rules 12(f) and/or 23, before the parties waste time and effort in discovery relating to them.

## II.    APPLICABLE LEGAL STANDARDS OF REVIEW

Rule 12(b)(6) provides for dismissal for failing to state a claim for relief. A "formulaic recitation of the elements" fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A "bare assertion" and "conclusory allegation[s]" also will not suffice. *Bell Atl.*

*Douglas Belleville v. Florida Insurance Services, Inc.*
*Southern District of Florida, Case No.: 23-cv-14369-AMC*

*Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Instead, Plaintiff must "include factual allegations for each essential element of his [] claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). "Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal" and are not taken as true under Rule 12(b)(6). *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003); *see also Chaparro v. Carnival Corp., 693* F.3d 1333, 1337 (11th Cir. 2012) ("Factual allegations that are 'merely consistent with a defendant's liability' fall short of being facially plausible."); *Jaafar Inv. Corp. v. Scottsdale Ins. Co.*, 2019 WL 8014368, at *1 (S.D. Fla. June 7, 2019) ("Defendant is correct that Plaintiff supports his allegations with insufficient specific facts about the nature and extent of [his] alleged loss.").

A complaint may also be dismissed under Rule 12(b)(1) for a lack of subject matter jurisdiction for lack of Article III standing. *See Elend v. Basham,* 471 F.3d 1199, 1205, 1208 (11th Cir. 2006). To show Article III standing, Plaintiff must plausibly allege: (i) he suffered a concrete "injury in fact," (ii) there is a causal connection between his injury and the conduct complained of (*a.k.a.*, "traceability"), and (iii) his injury must be capable of being redressed by a favorable decision (*a.k.a.*, "redressability"). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). As the party invoking federal jurisdiction, Plaintiff "bears the burden of establishing these elements." *Id.* at 561.

Additionally, to have Article III standing to seek injunctive relief in any federal case, Plaintiff must allege plausible facts establishing "continuing, present adverse effects" traceable to CHW's conduct. *O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974). In other words, a plaintiff seeking "injunctive relief ... must demonstrate that he is likely to suffer ***future injury*** ... at the hands of the defendant" and "the relief the plaintiff seeks will likely prevent such injury from occurring." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203–04 (11th Cir. 1991) (emphasis added). Like under Rule 12(b)(6), conclusory allegations need not be accepted as true by this Court under Rule 12(b)(1), either. *See Tomelleri v. Natale*, 2020 WL 5887151, at *2 (S.D. Fla. July 16, 2020).

## III.   ARGUMENT

In his threadbare Complaint (*see* Dkt. 1), Plaintiff seeks relief under the TCPA's DNC provisions and implementing regulations, which in pertinent part: (a) prohibit physically "initiat[ing]" more than one "telephone solicitation" call or text "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC Registry (Count I, *see* ¶¶ 57-62); and (b) require any "person or entity making a call for telemarketing purposes" to "honor a residential subscriber's" DNC request within

BLOCK & SCARPA ATTORNEYS AT LAW
601 21ST STREET, SUITE 401   •   VERO BEACH, FL 32960   •   (772) 794-1918

a "reasonable time" and have internal DNC policies and procedures in place meeting certain minimum standards (Count II, *see* ¶¶ 64-67). 47 U.S.C. §§ 227(c)(5) & (d); 47 C.F.R. §§ 64.1200(c)(2) & (d). As shown below, Plaintiff fails to state such claims or to plead supporting facts.

### A. The Entire Complaint Should Be Dismissed Under Rule 12(b)(6) Due to Plaintiff's Failure to Plausibly Allege Direct or Vicarious TCPA Liability.

For starters, the entire Complaint fails because Plaintiff does not plead sufficient facts supporting a plausible theory of liability. There are two potential theories of liability under the TCPA: (i) direct liability; or (ii) vicarious liability. *See, e.g., Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.*, 582 F.App'x 678, 679 (9th Cir. 2014)). As such, to be liable under the TCPA, the defendant "must either (1) *directly make* the call, or (2) have an *agency relationship* with the person who made the call." *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (emphasis added) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). Failure to adequately plead these theories warrants dismissal of an entire TCPA claim. *See, e.g., Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA and [equivalent state statute]—that Defendants were directly or vicariously liable for the text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements…."); *see also Hirsch v. Lyndon S. Ins. Co.,* 2019 WL 5110622, at *6 (M.D. Fla. June 7, 2019), *report and rec. adopted sub nom.,* 2019 WL 8370863 (Aug. 6, 2019), *aff'd*, 805 F.App'x 987 (11th Cir. 2020) (dismissing where plaintiff was "attempting to impose liability on Defendants for countless calls made throughout the United States … without alleging who made the calls"). The Complaint here fails to allege either theory.

Indeed, it is well accepted that direct liability under the TCPA applies *only* to persons or entities that "initiate" telemarketing calls, and that to "initiate" in this context means to "physically place" a phone call. *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Dish Network, LLC*, 2013 WL 1934349, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)); *accord Hossfeld v. Am. Fin. Sec. Life Ins. Co.,* 544 F. Supp. 3d 1323, 1331–32 (S.D. Fla. 2021) (holding that a TCPA defendant "cannot be directly liable for calls made by third parties"). *See also Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) (holding that, to avoid dismissal on this basis, all plaintiffs must allege facts to "allow the Court to reasonably infer that defendant is [directly] liable for *each call*" at issue) (emphasis added); *Metzler v. Pure Energy USA*

*Douglas Belleville v. Florida Insurance Services, Inc.*
*Southern District of Florida, Case No.: 23-cv-14369-AMC*

*LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing on this basis and holding all TCPA plaintiffs must first "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call" to avoid dismissal). This rule applies equally to claims brought under the DNC provisions, as invoked here. *See, e.g., Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 394-96 (D. Colo. 2014); *Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *4 (E.D. Pa. Oct. 7, 2021); *Naiman v. Freedom Forever, LLC*, 2019 WL 1790471, at *4 (N.D. Cal. Apr. 24, 2019) (all dismissing DNC claims on this basis).

Thus, federal courts across the country have routinely dismissed direct TCPA liability claims at the pleadings stage under Rule 12(b)(6) that, like Plaintiff's here, lack sufficient factual allegations demonstrating the defendant actually "made" or "initiated" the calls at issue in the sense of "***tak[ing] the steps necessary to physically place*" a call**. *Sheski*, 2020 WL 2474421, at *2-4 (dismissing where the plaintiff did not allege facts supporting direct liability) (emphasis added) (quoting *In re Dish Network, LLC*, 2013 WL 1934349, 28 FCC Rcd. at 6583 ¶ 26). *See also Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) ("at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls" and dismissing where plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that defendant actually, physically initiated the telephone calls at issue"); *Carson v. Home Depot, Inc.,* 2022 WL 2954327, at *5 (N.D. Ga. July 26, 2022) (dismissing DNC claim where plaintiff did not properly allege a viable theory of direct or vicarious TCPA liability). It is equally well-established that "[m]erely alleging that [a defendant] 'made' or 'initiated' [a] call"—like Plaintiff's Complaint does, at best—"is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019).[2] This Court should rule similarly.

As applied here, Plaintiff fails to plead sufficient actual facts, beyond his bald conclusions, supporting a plausible inference that FIS itself (as opposed to some third party) physically placed the

---

[2] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, courts evaluating and dismissing conclusory direct TCPA liability claims like Plaintiff's (including those cited above and below, and many others) have uniformly held that "make" or "initiate" in this context means to "physically" place the phone calls at issue. *See, e.g., Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018); *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018); *Hicks v. Alarm.com*, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020). *See also In re Rules and Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 7980 (Jul. 10, 2015) (ruling that there must be a "***direct connection*** between a person or entity and the making of a call" for direct liability to attach) (emphasis added).

*Douglas Belleville v. Florida Insurance Services, Inc.*
*Southern District of Florida, Case No.: 23-cv-14369-AMC*

calls at issue, as is required to plead direct TCPA liability and avoid dismissal. Indeed, the Complaint is more notable for what facts it does not contain, rather than what few (if any) it does. For example, Plaintiff does <u>not</u> allege, *inter alia*, that: (i) FIS owns or uses any of the numbers allegedly used to call him; (ii) he called any of those number back and reached FIS; (iii) FIS' name appeared on his Caller ID for any call; or (iv) any caller identified themselves as an FIS "employee"—all of which could support an inference of direct liability in some cases, as other courts have held. *See, e.g., Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (dismissing TCPA claim on this basis where complaint lacked such allegations); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023) (dismissing TCPA claim on this basis where the plaintiff did "not allege that the number associated with the call …belonged to [d]efendant").

In stark contrast, Plaintiff alleges here that calling any of the numbers purportedly used to call him only reaches a "busy signal." Dkt. 1, ¶ 44. Plaintiff also alleges that "no company name was mentioned" on the first alleged call. *Id*. ¶ 34. The same is apparently true for the second alleged call. *Id*. ¶¶ 35-37 (alleging that caller hung up "before Plaintiff could ask for additional detailed to confirm who was calling"). For the third alleged call, Plaintiff vaguely claims that the caller stated "they were calling from ***what sounded like*** Senior Life Services" (*id*. ¶ 39 (emphasis added)), which is hardly definitive as to the identity of that caller, let alone identifies who physically placed it. For the fourth alleged call, Plaintiff concludes that the caller "was calling to provide an insurance quote" and that he "feigned interest in the call and was told that the company name is Senior Life Services" (*id*. ¶ 42), which likewise does not identify who physically placed that call.[3] The Complaint also includes conclusory allegations suggesting that the calls at issue here were made "on behalf" of FIS by third parties, rather than by FIS itself. *See id*. ¶ 47 ("The unauthorized solicitation telephone calls that Plaintiff Belleville received ***from or on behalf of Defendant*** … have harmed Plaintiff….") (emphasis added). On top of all this, Plaintiff alleges that he was receiving other calls from various unidentified callers in the three years preceding the calls at issue. *Id*. ¶ 28. Given all the foregoing, therefore, it is just as reasonable, if not more so, to infer that third parties called Plaintiff, and <u>not</u> FIS itself directly—which is what Plaintiff is required to plausibly allege to avoid dismissal on this

---

[3] To the contrary, at best this suggests that a third party was calling to provide Plaintiff a quote for a Senior Life Services policy. That is <u>not</u> direct TCPA liability. *See, e.g., Wick v. Twilio Inc.*, 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017) (holding that "merely offering a good or service for sale does not mean that a retailer [physically] initiates the marketing calls for that product").

Block & Scarpa Attorneys at Law
601 21st Street, Suite 401    •    Vero Beach, FL 32960    •    (772) 794-1918

basis. *See also Bank v. Philips Elecs. N. Am. Corp.,* 2015 WL 1650926, at *2 (E.D.N.Y. Apr. 14, 2015) (allegations the calls were "made by, or on behalf of, or with the authorization of, an authorized dealer of [defendant]" were "too conclusory to state a plausible claim" for direct TCPA liability).

At bottom, Plaintiff merely alleges (or, rather, concludes) that he received four unsolicited calls "from Senior Life Services" (*i.e.*, FIS), each originating from different phone numbers that he does not connect to FIS, from unidentified persons—only two of whom vaguely mentioned the name "Senior Life Services" in some fashion. *See, e.g.,* Dkt. 1, ¶¶ 32-44. However, courts have consistently rejected such bald conclusions when dismissing TCPA claims on this basis. In fact, myriad courts have recognized that even a call allegedly offering the defendant's products, identifying the defendant by name, providing the defendant's contact information, and/or originating "from" someone associated with the defendant in some way does not allow for a plausible inference that the defendant itself (and not a third party) physically placed any call for direct TCPA liability purposes, without more. *See, e.g., Barnes v. SunPower Corp.,* 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023) (dismissing on this basis where plaintiff alleged he spoke with someone "who identified herself as working for" defendant); *Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) (dismissing on this basis holding that "a defendant 'generally does not [physically] initiate calls [within the meaning of the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf") (citation omitted); *Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *7-10 (E.D. Va. Nov. 12, 2020) (conclusory allegations that one caller expressly stated he/she was "associated with" the defendant and identified the defendant by name were insufficient for direct or vicarious TCPA liability purposes); *Hicks*, 2020 WL 9261758, at *5 (dismiss case brought by the same counsel representing Plaintiff here, holding that allegedly providing a call back number belonging to the defendant insufficient for direct TCPA liability); *Abante Rooter,* 2018 WL 288055, at *4 (holding allegations that the plaintiff received a call from someone purportedly calling on behalf of the defendant and who identified defendant by name insufficient for direct liability); *Meeks*, 2018 WL 1524067, at *1-5 (no direct liability, even though at-issue communication identified the defendant by name and identified the defendant's website). This Court should rule similarly here.

Lastly, other than one vague reference to the calls being "on behalf" of FIS (Dkt. 1, ¶ 47), Plaintiff does not assert any factual allegations in his Complaint supporting an inference that any third party "agent" called him, let alone that FIS had any "control" over such an agent's call

campaign (which is the key touchstone of vicarious liability under the TCPA[4]), even in a conclusory fashion. Thus, the Complaint is subject to dismissal on this additional basis. *See, e.g., Hirsch,* 2019 WL 5110622, at *6 (dismissing on vicarious liability grounds, noting that the FCC "has explicitly rejected a theory of liability under the TCPA against the seller of a product for telephone calls marketing that product absent an agency or similar relationship between the seller and the caller"); *Abramson v. 1 Glob. Capital, LLC*, 2015 WL 12564318, at *3 (S.D. Fla. Sept. 23, 2015) (dismissing where plaintiff's "allegations of vicarious [TCPA] liability [we]re conclusory in nature"); *Meeks*, 2018 WL 1524067, at *6 (dismissing on this basis where complaint lacked specific facts suggesting defendant controlled "whether, when, and to whom to send the text messages, along with their content"); *Rogers*, 2020 WL 3869191, at *8 (dismissing where plaintiff failed "to allege that [defendant] had some degree of control over who sent the text [at issue] and the manner and means by which it was sent," as required to demonstrate common law agency for vicarious TCPA liability).

In sum, Plaintiff's conclusory allegations fall far short of satisfying federal pleading standards. Because he does not plausibly allege that FIS itself (not some third party) actually physically made the calls at issue for direct TCPA liability purposes, and since his Complaint does not purport to assert any vicarious TCPA liability theory, this Court should follow the vast weight of applicable federal authority cited above holding that such deficient TCPA claims should be dismissed under Rule 12(b)(6), and dismiss Plaintiff's entire Complaint on these bases alone.[5]

**B.      The Complaint Should Also Be Dismissed Under Rule 12(b)(6) Because Plaintiff
      Fails to Plead Facts Supporting Other Essential Elements of His Claims.**

Beyond Plaintiff's failure to plausibly allege a theory of liability, which by itself is fatal to his entire Complaint, Plaintiff also fails to plead facts supporting other key elements of his asserted TCPA claims. In fact, as shown below, Plaintiff's Complaint fails on several levels in this regard:

<u>First</u>, as to Count I of the Complaint, TCPA's National DNC Registry provision and implementing regulations, on their face, indisputably apply <u>only</u> to "***residential*** telephone subscribers." 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2) (emphasis added). *See also Cunningham v. Politi,* 2019 WL 2517085, at *4 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted,*

---

[4] *See, e.g., Doyle v. Matrix Warranty Sols., Inc.,* 2023 WL 4188313, at *4 (D.N.J. June 26, 2023); *Cunningham v. Daybreak Solar Power, LLC,* 2023 WL 3985245, at *3 (N.D. Tex. June 13, 2023); *Rogers v. Assurance IQ, LLC,* 2023 WL 2646468, at *6 (W.D. Wash. Mar. 27, 2023).

[5] Of course, because Plaintiff's individual TCPA claims do not survive dismissal for the reasons above and the many others below, the class allegations must also be dismissed. *See, e.g., Henley v. Turner Broad. Sys., Inc.,* 267 F. Supp. 3d 1341, 1357 (N.D. Ga. 2017) (citing various cases).

BLOCK & SCARPA ATTORNEYS AT LAW
601 21ST STREET, SUITE 401      •      VERO BEACH, FL 32960      •      (772) 794-1918

2019 WL 2524737 (June 19, 2019) (dismissing under Rule 12(b)(6), noting: "The private right of action created by … § 227(c)(5) is accordingly limited to redress for violations of the regulations that concern residential telephone subscribers."). Likewise, for Count II, courts that have recognized a private cause of action for violations of the "internal" DNC procedural regulations (*i.e.*, 47 C.F.R. § 64.1200(d)) have ruled similarly—*i.e.,* that they apply only to "residential" numbers, not all. *See, e.g., Cunningham v. Rapid Capital Funding, LLC/RCF,* 2017 WL 3574451, at *3 (M.D. Tenn. July 27, 2017), *report and rec. adopted,* 2017 WL 3776165 (Aug. 31, 2017) (dismissing on this basis).

Moreover, federal district courts—including in this District—have widely recognized that plaintiffs hoping to bring TCPA DNC claims must allege sufficient non-conclusory facts showing that the subject phone number (*i.e.*, the number at which the plaintiff received the alleged calls) is ***actually used*** for "residential" purposes, or will face dismissal under Rule 12(b)(6). *See, e.g., Cunningham v. Caribbean Cruise Lines, Inc.,* 2016 WL 7494871, at *2 (S.D. Fla. Dec. 29, 2016) (dismissing DNC claim which failed to sufficiently allege residential use of cell phone). *See also Hicks,* 2020 WL 9261758, at *5; *Smith* v. *Vision Solar LLC,* 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020); *Politi,* 2019 WL 2517085, at *4; *Cunningham v. McDonald,* 2018 WL 6737418, at *2 (M.D. Tenn. Nov. 5, 2018), *report and rec. adopted,* 2018 WL 6198417 (Nov. 28, 2018); *Rapid Capital Funding,* 2017 WL 3574451, at *3; *Gillam v. Reliance First Capital, LLC,* 2023 WL 2163775, at *4 (E.D.N.Y. Feb. 22, 2023); *Rogers,* 2023 WL 2646468, at *4. This has been true notwithstanding the FCC's rebuttable "presumption" regarding the "residential" use of phone numbers purportedly listed on the National DNC Registry. *See, e.g., Vision Solar LLC*, 2020 WL 5632653, at *3 (dismissing DNC claim where the plaintiff did not sufficiently allege the "cell phone line in question is his residential phone, as required" to state such a claim);[6] *Hicks*, 2020 WL 9261758, at *5 ("Plaintiff argues at length that cellular phone numbers are eligible for listing on the Do Not Call registry … but his argument never returns to the facts of ***this*** case or the use of his phone.") (emphasis in original); *see also Morgan v. U.S. Xpress, Inc.,* 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018) (dismissing similar TCPA claim applying only to "residential" lines, noting plaintiff's characterizations that her number is a "residential" line "are not factual allegations, but legal terms drawn from the operative statute"). Courts have also held that whether someone qualifies as a "residential subscriber" for a DNC claim generally depends on certain conditions, including for

---

[6] *See also* Case No. 2:20-cv-02185 (E.D. Pa.), Dkt. 1, ¶17 (dismissed complaint in *Vision Solar*, alleging plaintiff's cell phone number was on the National DNC Registry).

*Douglas Belleville v. Florida Insurance Services, Inc.*
*Southern District of Florida, Case No.: 23-cv-14369-AMC*

example that the subject number "is the **primary means of reaching the individual at their residence**—that is, there is **no other landline or phone at their residence** which is instead the primary means of reaching them." *Mantha v. QuoteWizard.com, LLC*, 2022 WL 325722, at *6 (D. Mass. Feb. 3, 2022) (emphasis added). These maxims further warrant dismissal of both Counts.

As applied here, Plaintiff merely concludes that he "uses his cell phone number for personal use only as one would use a residential landline telephone number" and that he does not use it for "business purposes." Dkt. 1, ¶¶ 25-26. But these bald allegations are insufficient to state a plausible TCPA DNC claim under the provisions Plaintiff invokes for several reasons. On the one hand, Plaintiff's conclusion that his number is a "residential" line is not a fact, merely parrots the language of the statute, and thus need not be accepted as true by this Court under Rule 12(b)(6) when ruling here. *See Morgan*, 2018 WL 3580775, at *2. On the other, alleging that a phone number is used for "personal" calls or not for "business" calls likewise fails to plausibly allege "residential" use for a DNC claim. *See, e.g., Hicks*, 2020 WL 9261758, at *5 (dismissing TCPA DNC claim brought by same counsel as Plaintiff's on this basis, where the plaintiff also merely concluded that his cell phone number was "not associated with a business and is for personal use"); *Gillam,*, 2023 WL 2163775, at *4 (same, dismissing **with prejudice**); *Rogers,* 2023 WL 2646468, at *4 (dismissing on this basis, holding that alleged "personal" use of the subject number was insufficient to plead this element, and noting that "[t]hese are facts that are easily within the knowledge of [p]laintiffs and can be pleaded to remove any doubt about … whether those numbers are for residential use"). Additionally, Plaintiff does not allege any facts suggesting the phone number at issue here is the **primary means** of reaching him at his residence, let alone that there is **no** landline or other phone at his residence that is the primary means of reaching him there. *See, e.g., Mantha,* 2022 WL 325722, at *6. These facts are within Plaintiff's knowledge and could easily be pled, if they exist. That they were not is telling, and underscores the fatal defects in his claims. Thus, under the weight of applicable authority above, Plaintiff has not plausibly alleged he is a "residential telephone subscriber" within the meaning of the TCPA's implementing regulations, which likewise dooms his entire Complaint to dismissal.

**Second**, Section 227(c) of the TCPA "relates solely to telemarketing and solicitation calls." *Warnick v. Dish Network LLC,* 301 F.R.D. 551, 558 fn. 3 (D. Colo. 2014). Thus, to survive dismissal here as to Count I of the Complaint, Plaintiff must also plead sufficient facts suggesting his receipt of a "telephone solicitation"—which in turn is defined in the TCPA's implementing regulations as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental

BLOCK & SCARPA ATTORNEYS AT LAW
601 21ST STREET, SUITE 401   •   VERO BEACH, FL 32960   •   (772) 794-1918

*Douglas Belleville v. Florida Insurance Services, Inc.*
*Southern District of Florida, Case No.: 23-cv-14369-AMC*

of, or investment in, property, goods, or services, which is transmitted to any person" without their "prior express invitation or permission." 47 C.F.R. §§ 64.1200(c)(2), (f)(15). Similarly, as to Count II, the "internal" DNC rules on their face only apply for calls made for "telemarketing" purposes, which has a substantially similar statutory definition. *See id.*, §§ 64.1200(d), (f)(13).

Along these lines, courts have frequently dismissed DNC claims where (as here) the plaintiff fails to plead actual facts, beyond naked conclusions or simply parroting the statutory text, demonstrating that a call they received fits these definitions. *See, e.g., Dahdah v. Rocket Mortgage LLC*, 2023 WL 5941730, at *3 (E.D. Mich. Sept. 12, 2023) (dismissing DNC claim where plaintiff did not sufficiently allege the content of the calls and receipt of an actionable telephone solicitation) (citing, *inter alia, Katz v. CrossCountry Mortg., LLC*, 2022 WL 16950481, at *6 (N.D. Ohio Nov. 15, 2022)); *Eggleston v. Reward Zone USA LLC*, 2022 WL 886094, at *7 (C.D. Cal. Jan. 28, 2022) ("Plaintiff simply relies on conclusory labels such as 'advertisement' and 'promotion' without any supporting factual detail. This falls short of Plaintiff's burden to plead sufficient factual matter to state a plausible claim" under Section 227(c).); *Nicholas Greene v. Select Funding, LLC*, 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021) (dismissing where plaintiff did not allege the content of the calls "that would allow the Court to reasonably infer" they were telephone solicitations).

As applied here, Plaintiff does not allege the specific content of any call he purportedly received "from" FIS, such that the Court could reasonably infer that it fits the statutory definitions above. At best, Plaintiff merely concludes that certain of the alleged callers were "calling to provide an insurance quote" for someone named for "Phyllis Pearson" (*id.* ¶¶ 36, 39, 42), which others courts have found is insufficient to state a plausible DNC claim, without more. *See, e.g., Gillam*, 2023 WL 2163775, at *3 (dismissing DNC claim on this basis where the plaintiff "failed to allege sufficient facts regarding the content of the calls from which the [c]ourt could infer that the purpose of the calls was to encourage 'the purchase or rental of, or investment in, property, goods, or services'" and instead "merely conclude[d], without any factual support, that [defendant's] agent 'solicit[ed] refinancing products'"); *Dahdah*, 2023 WL 5941730, at *3 (holding that allegations that the defendant "made the calls for the purpose of selling mortgage products and services" were insufficient to demonstrate a "telephone solicitation" for a DNC claim, noting that "the Complaint alleges that [defendant] indicated it was trying to reach someone else, which suggests that the calls had nothing to do with encouraging [plaintiff] to purchase services from [defendant]").

**<u>Third</u>**, Count II should also be dismissed because there is no private cause of action for

BLOCK & SCARPA ATTORNEYS AT LAW
601 21ST STREET, SUITE 401   •   VERO BEACH, FL 32960   •   (772) 794-1918

violations of the invoked "internal" DNC regulations, which are only technical and procedural in nature. Indeed, Section 64.1200(d) "was ... promulgated under § 227(d), a subsection of the TCPA which does not provide a private cause of action," as opposed to Section 227(c) which does. *Braver v. NorthStar Alarm Serv.*, *LLC,* 2019 WL 3208651, at *14-15 (W.D. Okla. July 16, 2019) (granting summary judgment on the 64.1200(d) claim); *accord Wilson v. PH Phase One Operations L.P.*, 422 F. Supp. 3d 971, 981-982 (D. Md. 2019) (dismissing claim under 64.1200(d)); *Worsham v. Travel Options, Inc.,* 2016 WL 4592373, at *4, 7 (D. Md. Sept. 2, 2016), *aff'd,* 678 F.App'x 165 (4th Cir. 2017) (same); *Burdge v. Ass'n Health Care Mgmt. Inc.*, 2011 WL 379159, at *4 (S.D. Ohio Feb. 2, 2011) (same). Because Section 64.1200(d) does not provide a private cause of action, Count II should be dismissed under Rule 12(b)(6) **with prejudice**. *See Wilson,* 422 F. Supp. 3d at 981-982.[7]

**Fourth**, assuming *arguendo* there were a private right of action under Section 64.1200(d), and there is not, Count II in this case nevertheless fails on its merits for several reasons. For starters, Plaintiff's allegations regarding FIS' purported failure to implement or follow internal DNC policies are entirely conclusory, merely parrot the statutory text with no factual support, and thus do not comply with federal pleading standards (*see* Dkt. 1, ¶¶ 20 and 65), which likewise supports dismissal of Count II for failing to meet basic federal pleading standards. *See, e.g., Laccinole v. Appriss, Inc*., 453 F. Supp. 3d 499, 505-506 (D.R.I. 2020) (dismissing Section 64.1200(d) claim on this basis).

Additionally, courts recognizing such a cause of action have also held that the TCPA's "internal" DNC regulations do not prohibit "actually calling [or texting] an individual after the individual has requested placement on a[n] [internal] do-not-call list ... nor do the regulations specifically proscribe failing to record an individual's request to be placed on a do-not-call list." *Charvat v. DFS Servs. LLC,* 781 F. Supp. 2d 588, 592 (S.D. Ohio 2011) (citing *Charvat v. GVN Michigan, Inc.,* 561 F.3d 623, 632 (6th Cir. 2009)). In other words, a violation of Section 64.1200(d) <u>only</u> stems from "the initiation of the phone call without having [first] implemented the minimum procedures" and not when an internal DNC request is not honored or for other reasons (*e.g.*, training employees, having or providing a copy of a written internal DNC policy, maintaining the internal

---

[7] Plaintiff may cite contrary opinions in response hereto and argue that Section 64.1200(d) of the regulations falls under Section 227(c) of the TCPA, which does afford a private right of action. However, many of the cases holding there is such a private cause of action under Section 64.1200(d) rely primarily, if not exclusively, on the flawed ruling in *Charvat v. NMP*, 656 F.3d 440, 448 (6th Cir. 2011), or on cases relying on that faulty decision, where the Sixth Circuit merely "state[d]" that § 64.1200(d) was promulgated under § 227(c) rather than § 227(d) "without [any] analysis." *Braver*, 2019 WL 3208651, at *15. FIS submits that this Court should reject *Charvat* and its flawed progeny.

DNC list, etc.). *Charvat v. GVN Michigan, Inc.,* 561 F.3d at 632. Thus, the question is whether the caller **maintained** such procedures in the first instance prior to making the violative calls, not merely whether additional calls were allegedly received after a DNC request. *See id.*; *see also Barr v. Macy's.com, LLC,* 2023 WL 6393480, at *4–6 (S.D.N.Y. Sept. 29, 2023) (dismissing internal DNC claim brought by some of the same counsel representing Plaintiff on this basis, and others, and recognizing that the "mere fact" a plaintiff receives a call after an internal DNC request is not a violation of the regulations) (citing *Simmons v. Charter Commc'ns, Inc.,* 222 F. Supp. 3d 121, 140 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017)). Plaintiff's Count II fails here, as well.

In this regard, as noted above, Plaintiff's scant allegations regarding FIS' supposed lack of internal DNC procedures are entirely conclusory and speculative, and merely parrot the statutory text. *See* Dkt 1, ¶ 65 ("Defendant placed calls to Plaintiff … without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls/text messages."); *id.* ¶ 20 (alleging FIS "lacks a sufficient opt-out system to ensure that a consumer who notifies Senior Life Services to stop calling them will be removed from their calling list."). Courts have rejected substantially similar allegations as being insufficient to plausibly allege an internal DNC rule violation, without more. *See, e.g., Barr,* 2023 WL 6393480, at *5 (dismissing where plaintiff alleged that the defendant "failed to 'implement[ ] internal procedures for maintaining' an internal DNC registry and/or failed to 'implement[ ] procedures that [met] the minimum requirements to allow the Defendant or its agent to initiate telemarketing calls'").

Further, Plaintiff tellingly does <u>not</u> allege, for example, that he requested a copy of FIS' internal DNC policy—which he could have done, per the statute (*see* 47 C.F.R. § 64.1200(d)(1))— and that FIS failed to produce such a policy upon request. That is not a violation of the internal DNC rules by itself, but doing so might at least have given Plaintiff a minimal factual basis to allege whether FIS had internal procedures in place before he was called. *See also Barr,* 2023 WL 6393480, at *5 (noting that requesting a copy of the defendant's internal DNC policy might "bolster" such a claim); *Rahimian v. Adriano*, 2022 WL 798371, at *3 (D. Nev. Mar. 16, 2022) (ruling similarly and dismissing). That Plaintiff did not do so is telling. In sum, there are **zero facts** in the Complaint from which the Court could infer FIS did not have or maintain internal DNC procedures at the time of the alleged calls, as required to state such a claim (where recognized) under the weight of federal applicable authority. Thus, Count II should be dismissed on this basis, too. *See, e.g., Laccinole*, 453

F. Supp. 3d at 505; *Barr*, 2023 WL 6393480, at \*5; *see also Callier v. Nat'l United Grp., LLC,* 2021 WL 5393829, at \*7 & 9-10 (W.D. Tex. Nov. 17, 2021) (ruling similarly).

   **Fifth**, Plaintiff vaguely suggests he is seeking treble damages for a willful/knowing TCPA violation. *See, e.g.,* Dkt. 1, ¶ 62 & Prayer. However, his allegations on this front are entirely conclusory and thus do not meet federal pleading standards, either. *See, e.g., Canary v. Youngevity Int'l, Inc.*, 2019 WL 1275343, at \*9 (N.D. Cal. Mar. 20, 2019) (dismissing claim for alleged willful/knowing TCPA violations, in part, because it "consist[ed] of nothing more than bare-bones legal conclusions"). Those allegations should be dismissed, at the minimum, under Rule 12(b)(6).

### C.   Count II of the Complaint and Plaintiff's Requests for Injunctive Relief Should Also Be Dismissed for Lack of Article III Standing Under Rule 12(b)(1).

   Count II should also be dismissed under Rule 12(b)(1) for lack of Article III standing. In this regard, Plaintiff never once alleges in his Complaint that he asked for his cell phone number to be placed on **any** caller's internal DNC list, and instead he "feigned interest" during the calls. *See, e.g.,* Dkt. 1, ¶¶ 30-42. This alone warrants dismissal of Count II on Article III standing grounds. *See, e.g., Grieben v. Fashion Nova, Inc.,* 2022 WL 4598649, at \*3-5 (S.D. Fla. Sept. 29, 2022) (dismissing Section 64.1200(d) claim with prejudice for lack of standing where the plaintiff did not allege that he asked to be placed on the caller's internal DNC list) (citing, *inter alia, Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019)); *Thompson v. Genesco, Inc.,* 2024 WL 81187, at \*2–7 (E.D. Mo. Jan. 8, 2024) (ruling similarly, dismissing, and applying, *inter alia, Cordoba*); *Perrong v. S. Bay Energy Corp.,* 2021 WL 1387506, at \*2 (E.D. Pa. Apr. 13, 2021) (dismissing on this basis, holding that "because [plaintiff] never [directed the defendants] not to call him [and therefore] did not satisfy the 'regulatory prerequisite' before he could bring a claim under Section 64.1200(d)(1)").

   Further, as noted above, requests for certain relief—like injunctive relief—may also be dismissed under Rule 12(b)(1) where the plaintiff lacks Article III standing to seek it. *See, e.g., Elend*, 471 F.3d at 1205-12. As applied in this case, Plaintiff <u>generally</u> seeks injunctive relief for himself and the putative classes. *See* Dkt. 1, ¶¶ 22, 55 & Prayer. Again, however, any plaintiff seeking injunctive relief in **any** federal case must allege a threat of ***future*** injury. *See Cone Corp.,* 921 F.2d at 1203–1204; *Elend*, 471 F.3d at 1207; *see also Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1251–52 (S.D. Fla. 2019) (dismissing request for injunctive relief in TCPA case on this basis where no threat of possible future injury alleged). In this case, Plaintiff's Complaint does <u>not</u> allege any such threat of future injury by FIS here, as is indisputably required to demonstrate Article

III standing for injunctive relief. And as Plaintiff "lacks [Article III] standing to bring the asserted claims on his own behalf" against FIS, he also "lacks standing to represent a class asserting such claims." *Atkinson v. Wal-Mart Stores, Inc.*, 2009 WL 1458020, at *4 (M.D. Fla. May 26, 2009).

> **D.    Alternatively the Court Should Strike Certain Improper Allegations from the Complaint Under Rules 12(f) and/or 23.**

Should the Court decide not to dismiss the entire Complaint for any reason despite the multiple dispositive grounds provided above, it should nevertheless strike certain improper allegations from the Complaint, under Rules 12(f) and/or 23, for the reasons discussed below.

> **1.    The Allegations in Paragraphs 15, 17, 19, and 21 of the Complaint are Immaterial, Impertinent, Scandalous, and Unduly Prejudicial and, Therefore, Should Be Stricken.**

Under Rule 12(f), this Court "may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." "Immaterial" matter "ha[s] no essential or important relationship to the claim," whereas "impertinent" matter consists of statements that "do not pertain, and are not necessary, to the issues in question." *U.S. Diamond & Gold v. Julius Klein Diamonds LLC*, 2007 WL 1026421, at *11 (S.D. Ohio Mar. 29, 2007). Here, Plaintiff's Complaint contains immaterial, impertinent and scandalous allegations—specifically, relating to online statements by unidentified parties and by possibly disgruntled (or perhaps misinformed) former employees of FIS—which are pure hearsay and have nothing to do with <u>this</u> case or these parties. *See* Dkt 1, ¶¶ 15, 17, 19, and 21 and the footnotes thereto. Those plainly improper and immaterial allegations should be stricken.

Federal district courts, in the TCPA context and in others, have recognized that "'[s]uperfluous historical allegations are a proper subject of a [Rule 12(f)] motion to strike.'" *Hicks,* 2020 WL 9261758, at *5 (quoting *Woo v. Home Loan Group, L.P.*, 2007 WL 6624925, at *5 (S.D. Cal. Jul. 27, 2007) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994))). The same is true for allegations about complaints filed in other cases or, as particularly relevant here, online "complaints" posted anonymously by third parties. *See, e.g., Hicks,* 2020 WL 9261758, at *5-6 (striking similar allegations in TCPA case).

In this case, paragraphs 15, 17, 19, and 21 of the Complaint (and the associated footnotes) contain numerous improper allegations that should be stricken in their entirety under Rule 12(f). These refer to anonymous posts on third party websites that Plaintiff suggests are reflective of unsolicited calls to ***other*** consumers from or on behalf of FIS. Yet, nothing in those posts (which are pure hearsay) suggests that FIS is liable for the ***specific*** alleged calls to Plaintiff at issue ***here***. *See*

*Hicks,* 2020 WL 9261758, at \*6 (noting such allegations "offer attenuated information that does little to support Plaintiff's claims"). *See also Gallegos v. Roman Catholic Archbishop of San Francisco,* 2016 WL 3162203, at \*5 (N.D. Cal. June 7, 2016) (striking irrelevant allegations "involving a different plaintiff, and different underlying events"); *Fisher v. Alarm.com Holdings, Inc.,* 2018 WL 5717579, at \*3 (N.D. Ill. Nov. 1, 2018) (stating that allegations involving defendant's alleged conduct in an unrelated case did nothing to support an inference that defendant was vicariously liable in the case at bar). Thus, his vague and unsubstantiated internet hearsay allegations about calls to **other** unidentified persons are irrelevant, immaterial, have no bearing on **Plaintiff's claims** or this case, and only serve to unduly prejudice FIS. *Id.* Therefore, they should be entirely stricken.

## 2. Plaintiff's Class Related Allegations Are Facially Uncertifiable as Pled and, Thus, They are Properly Stricken At the Pleadings Stage.

It is well settled that "[s]ometimes the issues are plain enough from the pleadings" to determine that a case should not proceed as a class action. *Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 160 (1982); *Lawson v. Life of the S. Ins. Co.,* 286 F.R.D. 689, 695 (M.D. Ga. 2012). In this regard, courts in this Circuit have widely recognized that they may (and, indeed, **should** in appropriate cases) strike faulty class allegations at the pleadings stage under Rule 12(f) where, as here, it is apparent from the face of the complaint that the proposed classes are not certifiable under Rule 23 as pled. *See, e.g., Lawson,* 286 F.R.D. at 700-01; *Foxx v. Ocwen Loan Servicing, LLC*, 2012 WL 2048252, at \*9-10 (M.D. Fla. June 6, 2012); *see also Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1006 (11th Cir. 1997) (recognizing that propriety of class certification may be "readily apparent" from the face of the complaint); *MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.,* 755 F. Supp. 2d 1205, 1207 (M.D. Fla. 2010) (ruling similarly). This Court should too.

Courts often find proposed classes to be uncertifiable and strike them at the pleadings stage, in TCPA cases and others, where, as here: (i) common questions of law and fact do not predominate; (ii) the proposed definitions are impermissibly "fail-safe"; and/or (iii) the class definition is overbroad. *E.g., Sauter v. CVS Pharmacy, Inc.,* 2014 WL 1814076, at \*9 (S.D. Ohio May 7, 2014); *Pepka v. Kohl's Dep't Stores, Inc.,* 2016 WL 8919460, at \*1-5 (C.D. Cal. Dec. 21, 2016); *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.,* 2018 WL 488257, at \*4 (N.D. Ill. Jan. 18, 2018); *Lindsay Transmission, LLC v. Office Depot, Inc*., 2013 WL 275568, at \*4-5 (E.D. Mo. Jan. 24, 2013). In this case, Plaintiff's proposed class definitions (*see* Dkt 1, ¶ 50) fit neatly into these categories.

### a) Common Questions of Law and Fact Do Not Predominate.

*Douglas Belleville v. Florida Insurance Services, Inc.*
*Southern District of Florida, Case No.: 23-cv-14369-AMC*

As pled, Plaintiff's proposed classes would require individualized determinations on the key issue of consent, among others, which demonstrates that common questions of law and fact would not predominate, as required by Rule 23(b)(3). To meet this requirement, common questions must "present a significant aspect of the case" and "can be resolved for all members of the class in a single adjudication." *Bacon v. Stiefel Lab'ys, Inc.,* 275 F.R.D. 681, 695 (S.D. Fla. 2011) (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998)). "[P]redominance is lacking" where, as here, "whether the calls were consented to—a threshold issue—is not subject to generalized proof." *Newhart v. Quicken Loans Inc.,* 2016 WL 7118998, at *2 (S.D. Fla. Oct. 12, 2016).

Thus, courts routinely deny class certification in TCPA cases on predominance grounds where individualized determinations of "consent" would be needed. *See, e.g., New Concept Dental v. Dental Res. Sys., Inc.,* 2020 WL 3303064, at *9–10 (S.D. Fla. Mar. 3, 2020); *Newhart,* 2016 WL 7118998, at *2; *Balthazor v. Cent. Credit Servs., Inc.,* 2012 WL 6725872, at *4 (S.D. Fla. Dec. 27, 2012); *Tillman v. Ally Fin. Inc.,* 2017 WL 7194275, at *7 (M.D. Fla. Sept. 29, 2017). Courts also often strike class allegations at the pleadings stage and/or grant pre-discovery motions to deny certification, in TCPA cases and in others, where individualized determinations of "consent" are needed. *See, e.g., Pepka* and *Lindsay, supra; Eldridge v. Cabela's Inc.,* 2017 WL 4364205, at *7-11 (W.D. Ky. Sept. 29, 2017); *Cholly v. Uptain Grp., Inc.,* 2017 WL 449176, at *4 (N.D. Ill. Feb. 1, 2017); *Dorfman v. Albertson's LLC,* 2020 WL 86192, at *5 (D. Idaho Jan. 7, 2020); *see also Baisden v. Credit Adjusts., Inc.,* 813 F.3d 338, 343 (6th Cir. 2016) ("[t]he **context of the consent provided is critical**" in a TCPA case) (emphasis added). This Court should rule similarly in this case.

Here, while Plaintiff's proposed classes do not expressly include the word "consent," Plaintiff seeks to represent two nationwide classes of persons for whom FIS purportedly called "for substantially the same reason Defendant called Plaintiff" including "at least once after the Defendant's records reflect the person requested that they stop calling." Dkt. 1, ¶ 50. However, the "reason" FIS or any third parties allegedly acting on its "behalf" allegedly made calls and whether FIS or those third parties continued to place telemarketing calls after a request to stop calling <u>cannot</u> be determined on a class wide basis, as individualized issues will inevitably predominate. *See, e.g., Eldridge,* 2017 WL 4364205, at *9 (noting caselaw "favors striking" revocation classes in TCPA cases) (collecting cases)). Indeed, though someone who consented can later request that the caller "stop calling"—*i.e.,* **revoke** consent—under the TCPA, they "**cannot use ambiguous statements**" and "must **clearly** revoke consent." *Barnett v. Bank of Am., NA,* 2021 WL 2187950, at *5 (W.D.N.C.

*Douglas Belleville v. Florida Insurance Services, Inc.*
*Southern District of Florida, Case No.: 23-cv-14369-AMC*

May 28, 2021) (emphasis added). This can vary by individual, as can how consumers can provide consent to one or multiple callers. Moreover, as noted above, the TCPA's DNC provisions only prohibit "telephone solicitations" and, in that regard, a call does not qualify as a "telephone solicitation" where (among other things) the plaintiff gave their "prior express invitation or permission"—*i.e.,* their **consent**—to receive the call. 47 U.S.C. § 227(c)(5); 47 C.F.R. §§ 64.1200(c)(2) & (f)(15). Thus, the critical legal and factual issues of consent and consent revocation are inextricably intertwined with Plaintiff's proposed class definitions, as pled. Consequently, whether any calls were made without the consent of the Plaintiff and the putative class members, whether they properly revoked consent, and/or the calls constituted a "telephone solicitation" in the present case are highly context-specific inquires, and they are not common questions of law or fact that can be resolved by generalized proof across the entire class in a single adjudication.[8] Rather, they would necessitate individualized factual and legal inquires on these indisputably critical threshold issues, among others.[9] *See, e.g., Lindsay*, 2013 WL 275568, at *5 (granting motion to strike, holding "the absence of prior consent and the absence of a prior business relationship" are individualized issues precluding certification in a TCPA case under Rule 23). Therefore, Plaintiff's proposed class definitions should be stricken on predominance grounds, at the minimum.

*b)*     *The Proposed Classes Are Impermissibly "Fail-Safe."*

Plaintiff's proposed class definitions are also impermissibly fail-safe, in further violation of Rule 23, because the Court must make a determination on the merits of putative class members' individual claims to determine membership. *See, e.g., Fennell v. Navient Sols., LLC,* 2019 WL 3854815, at *3 (M.D. Fla. June 14, 2019). A fail-safe class is one that includes only those putative members who are entitled to relief. *Id.* Fail-safe classes are not permitted because they "shield[] the putative class members from receiving an adverse judgment" and "either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment." *Balassiano*

---

[8] The same would be true for persons with an "established business relationship" with the caller, which is also context-dependent, can vary wildly by individual, and can also prevent calls from qualifying as "telephone solicitations" as required for a § 227(c) claim. 47 C.F.R. § 64.1200(c)(2); *see also* 47 C.F.R. § 64.1200(f)(5) (defining "established business relationship").

[9] Individualized inquires will also be required here to determine whether each class member utilized their number for "residential" purposes. *See, e.g., Hirsch v. USHealth Advisors, LLC,* 337 F.R.D. 118, 135 (N.D. Tex. 2020) (questions such as residential status "require 'evidence that varies from member to member'"). Courts have denued class certification and/or strike class allegations in TCPA cases on predominance grounds where individualized determinations of "revocation" or "residential" status would be required. *See, e.g., Eldridge, Cholly, Hirsch, supra.* Such is true here.

*Douglas Belleville v. Florida Insurance Services, Inc.*
*Southern District of Florida, Case No.: 23-cv-14369-AMC*

*v. Fogo De Chao Churrascaria (Orlando) LLC,* 2020 WL 7365264, at *3 (M.D. Fla. Dec. 15, 2020), *report and rec. adopted,* 2021 WL 2019722 (Jan. 7, 2021) (citation omitted).

Here, Plaintiff's proposed classes are impermissibly fail-safe because membership depends on the merits of the putative class members' underlying claims. Indeed, the proposed classes, by definition, include only persons (a) who received a call on a "residential telephone number" (*i.e.,* whether they use their number for "residential" purposes within the meaning of the TCPA's regulations); (b) who had their number "listed on the National Do Not Call Registry for at least thirty days" (*i.e.,* whether they are a "residential telephone subscriber who has registered his or her telephone number" who is entitled to list their number on the National DNC Registry and bring such a claim); and/or (c) who "requested that [FIS] stop calling" (*i.e.,* whether they have Article III standing to bring an internal DNC claim). Dkt. 1, ¶ 50. Each of these is undoubtedly a merits-based inquiry going directly to the heart of the underlying TCPA claims here, and there is no objective way to determine who is a class member as pleaded. Thus, Plaintiff's proposed classes are impermissibly fail-safe on their face and, therefore, they are properly stricken at the pleadings stage for this additional reason. *See, e.g., Bryant v. King's Creek Plantati*on, LLC, 2020 WL 6876292, at *3 (E.D. Va. June 22, 2020) (striking a similar proposed TCPA DNC class as impermissibly fail-safe).

> c)    *The Proposed Classes Are Impermissibly Overbroad.*

A proposed class definition is impermissibly overbroad where, as here, the class includes members to whom the defendant would not be legally liable. *See* 7A Wright & Miller, FEDERAL PRAC. & PROC. § 1760 (3d ed. 2005); *see also Walewski v. Zenimax Media, Inc.,* 502 F.App'x 857, 861 (11th Cir. 2012) (*per curiam*) (affirming denial of certification where proposed class definition "impermissibly include[d] members who ha[d] no cause of action as a matter of law").

Here, Plaintiff's proposed classes are impermissibly overbroad because, as pled, they would include individuals who (i) do not use their numbers for "residential" purposes; (ii) have provided "prior express invitation or permission" (*i.e.,* consent); and/or (iii) had an established business relationship with FIS and therefore for whom there would be no TCPA DNC claim against FIS as a matter of law. *See* 47 C.F.R. § 64.1200(f)(15) ("The term telephone solicitation . . . does not include a call or message … to any person with that person's prior express invitation or permission…[or] with whom the caller has an established business relationship."); 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2) (prohibiting telephone solicitations to "residential telephone subscriber[s]").

Courts routinely strike proposed class definitions and deny class certification, including in

TCPA cases, on this basis. *See, e.g., A Custom Heating & Air Conditioning, Inc.,* 2018 WL 488257, at *4 (striking class definition as overbroad where it did not exclude those who solicited the fax at issue and therefore "ha[d] no TCPA claim against Defendants"); *Jamison v. First Credit Servs., Inc.,* 290 F.R.D. 92, 108 (N.D. Ill. 2013) (class definition overbroad where it would "include thousands of individuals who consented to receiving calls on their cellphones and thus have no grievance under the TCPA"); *see also Licari Family Chiropractic v. eClinical Works, LLC,* 2019 WL 7423551, at *3–5 (M.D. Fla. Feb. 16, 2018) (denying certification in TCPA action where proposed class did not exclude individuals who solicited the fax and thus had no claim). This Court should do so here.

Indeed, as one such court aptly noted, if "all of the proposed class members received only unsolicited [calls], the class definition should say so." *A Custom Heating & Air Conditioning, Inc.,* 2018 WL 488257, at *4. Moreover, permitting a facially overbroad class definition to proceed would be inherently prejudicial to FIS. "Given the '*in terrorem* character of a class action,' [ ] a class defined so as to improperly include uninjured class members increases the potential liability for the defendant and induces more pressure to settle the case, regardless of the merits." *Cordoba*, 942 F.3d at 1276. Thus, Plaintiff's proposed classes should be stricken on this additional basis, as well.[10]

## IV.   **CONCLUSON**

For all the reasons above, and for such additional reasons that may be presented to the Court prior to ruling hereon, Plaintiff's Complaint should be dismissed in its entirety under Rules 12(b)(6) and/or 12(b)(1) or, alternatively, the improper allegations identified above should be stricken.


DATED:   January 11, 2024

---

[10] With Plaintiff's proposed class definitions properly stricken, all of Plaintiff's remaining class-related allegations (*see, e.g.,* Dkt. 1, ¶¶ 51-55) would be superfluous and therefore should also be stricken. *See, e.g., Flores v. City of California City,* 2019 WL 1934016, at *6 (E.D. Cal. May 1, 2019) (striking "any reference to a class, Rule 23, or a class action" after dismissal of class claims).

*Douglas Belleville v. Florida Insurance Services, Inc.*
*Southern District of Florida, Case No.: 23-cv-14369-AMC*

## CERTIFICATE OF GOOD FAITH CONFERENCE

I hereby certify that, pursuant to Local Rule 7.1(a)(3), counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the foregoing motion to strike in a good faith effort to resolve the issues raised therein but has been unable to do so.

By:  /s/ Mario G. Menocal
      Mario G. Menocal, Esq.

Respectfully submitted,

Block & Scarpa, Attorneys at Law
Attorneys for Defendant
601 21st Street, Suite 401
Vero Beach, Florida 32960
Tel: 772-794-1918
Email: mmenocal@blockscarpa.com
Email: eservice@blockscarpa.com
Email: cdean@blockscarpa.com
By:  /s/ Mario G. Menocal
      Mario G. Menocal, Esq.
      Florida Bar No.: 99048