UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **DOUGLAS BELLEVILLE,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**FLORIDA INSURANCE SERVICES, INC.,** a Florida corporation,<br><br>*Defendant.* | Case No. 2:23-cv-14369-AMC<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**AMENDEED CLASS ACTION COMPLAINT**

Plaintiff Douglas Belleville ("Plaintiff Belleville" or "Belleville") brings this Class Action Complaint and Demand for Jury Trial against Defendant Florida Insurance Services, Inc. dba Senior Life Services ("Defendant" or "Senior Life Services") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls to consumers without consent including calls to phone numbers that are registered on the national Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Belleville, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

1.  Plaintiff Belleville is a resident of St. Louis, Missouri.

1

2. Defendant Senior Life Services is a company registered in Florida, with its headquarters located in Vero Beach, Florida. Defendant Senior Life Services conducts business throughout this District and throughout the US.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from this District.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.6 billion robocalls were placed in October 2023 alone, at a rate of 148.7 million per day. www.robocallindex.com (last visited November 12, 2023).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

13. Florida Insurance Services Inc operates using the d/b/a Senior Life Services:

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

**Fictitious Name Detail**

**Fictitious Name**
SENIOR LIFE SERVICES

**Filing Information**
| | |
|---|---|
| Registration Number | G05256900214 |
| Status | ACTIVE |
| Filed Date | 09/13/2005 |
| Expiration Date | 12/31/2025 |
| Current Owners | 1 |
| County | INDIAN RIVER |
| Total Pages | 6 |
| Events Filed | 5 |
| FEI/EIN Number | 59-2574542 |

**Mailing Address**
2300 3RD COURT
VERO BEACH, FL 32960

**Owner Information**
FLORIDA INSURANCE SERVICES, INC
2300 3RD COURT
VERO BEACH, FL 32960
FEI/EIN Number: 59-2574542
Document Number: H71091

[3]

14.  Senior Life Services sells life, health and annuity insurance plans, including final expense insurance to consumers throughout the U.S.[4]

15.  Senior Life Services employees have posted complaints online on job review websites regarding the quality of the leads they were provided, including:

---

[3] https://dos.sunbiz.org/scripts/ficidet.exe?action=DETREG&docnum=G05256900214&rdocnum=G05256900214

[4] https://www.linkedin.com/company/senior-life-services/about/

4



16. Senior Life Services places solicitation calls to consumers to solicit its insurance plans.

---

[5] https://www.glassdoor.com/Reviews/Senior-Life-Services-Reviews-E945296.htm
[6] Id.
[7] Id.

17. Numerous employees have posted online stating that Senior Life Services expected them to be on the phone for a minimum of 6 hours, daily, such as:

**They will demand 6 hours of on-the-phone talk time daily..**

Life Insurance Agent (Former Employee) - Vero Beach, FL (Remote) - March 21, 2022

They will demand that you are working for 10+hours each day regardless of how much production you are producing, very frustrating, and if that demand is not met a parting of ways is suggested/brought up..
Also do not resign until you have received your most recent paycheck or you will be forfeiting that commission, (they will not give you a heads up)..
Last but not least you are only receiving between 25% to 30% on preferred carrier sales (1/8th on about 33% of your sales), and you are capped at $1000 per sale no matter the sale amount.......so the free leads and free training they "offer", virtually is being paid for with your commission that is withheld..
Be weary my friends.....
e.g.: A $90/mth policy, which is $1080.00 AP, you would roughly receive $325 in commission.. /:[8]

18. Unfortunately, some of these calls from Senior Life Services are being placed to consumers without consent, including to consumers that registered their phone numbers on the DNC, as per Plaintiff's experience.

19. Senior Life Services employees have posted complaints online on job review websites complaining about cold calling that they had to engage in to generate business, including:

**Didn't drink the koolaid**

Cold Caller
Former Employee, more than 1 year    Meridian, ID

✗ Recommend    ✓ CEO Approval    ✗ Business Outlook

**Pros**
A select few make money there. good CRM

**Cons**
Cold call 50+ hrs/wk. leads don't know why you're calling. Not best products for clients. Confusing pay statements. Hype

**Advice to Management**
feedback falls on deaf ears [9]

---

[8] https://www.indeed.com/cmp/Senior-Life-Services-8/reviews/cold-calling?id=09ab28e0782d7cd2
[9] https://www.glassdoor.com/Reviews/Senior-Life-Services-Reviews-E945296.htm

6

> **Cold calling**
>
> Insurance Agent (Former Employee) - Port Saint Lucie, FL - April 19, 2022
>
> SLS provides leads, however new agents get the "B" leads, not the good "A" leads. It makes sense that new agents should practice on less valuable customer contacts, but these should be called D leads. Most have no recollection of asking about Life Insurance.
>
> The environment is chaotic. You call cold leads and of course 90% don't even answer. If someone is a bit interested, you have to find an available experienced agent to help close the sale. They will try to sell anyone. Unemployed, dying, whatever. [10]

20. To make matters worse, Senior Life Services lacks a sufficient opt-out system to ensure that a consumer who notifies Senior Life Services to stop calling them will be removed from their calling list.

21. Consumers have posted complaints about receiving unsolicited telemarketing calls from Senior Life Services, including complaints from consumers who were unable to get Senior Life Services to stop calling when the consumer opted out, including:

- "This business continues to call using spoofed phone numbers utilizing robo and offshore vendors. ***They completely disregard the National Do Not Call registry and have even go so far as calling 5+ times in a row as early as 5:30 AM Pacific time.*** Their practices are harassing and should be stopped immediately."[11] (emphasis added)

- "This business hires third party calling companies from foreign countries such as ***** to make HUNDREDS of spam calls on their behalf. I get a call about every 10 minutes from someone in ***** asking me ' do you have ******** part A and B '. ***The calls never end regardless of being on their ' Do not call list '.*** These spammers call to screen prospective clients for eligibility prior to transferring them to ' Senior Life Services' And they ***never stop calling no matter how many times you ask.*** It's ridiculous"[12] (emphasis added)

- "… These sakes ***people from Senior Life Services call me everyday and I have asked ice Lt to stop calling me and they keep on*** I have cussed them out and they keep in they say I requested info and I ask where and when and of course they cant supply that because I lie. My final expenses have been paid for years. I

---

[10] https://www.indeed.com/cmp/Senior-Life-Services-8/reviews/cold-calling?id=09ab28e0782d7cd2
[11] https://www.bbb.org/us/fl/vero-beach/profile/insurance-consultant/senior-life-services-0633-4000876/complaints
[12] Id.

7

> want them to stop calling me period forever I am contacting a lawyer to see about starting a class action lawsuit against them Im sure Im not the only person they harass. My health is bad and they make my health much worse by aggressively calling and aggravating me. Please stop calling meI dont apologize and I ne weve er want to hear from anyone at your company again ever ever I hate everyone that works there and warn people about your crappy company every chance I get. Stop them from calling me please..."[13] (emphasis added)

- "I am on a federal 'do not call' list but get multiple calls each week from this business. *I have repeatedly asked to stop calling and remove me from their list. They ne'er do.* I've finally resorted to keeping them on the phone for 30 minutes or more, only to tell them it was just a waste of time. Still,'they won't remove me from their list. I have all calls recorded and said the next time I was going to file a complaint with BBB. I just got off the phone with Ashley Gonzalez from the Bradenton, FL offi'e. All I'm asking is to please respect my request to stop calling. Thank you!"[14]

- "I have been receiving unwanted and illegal robocalls from this company. *I am on the do not call list and have been for several years, yet this company chooses to continue to call me.* I would like the company to respond to my email so we can resolve this matter."[15] (emphasis added)

- "received 19 phone calls within one day, asked to speak to somebody to *remove me from the call list stated that it's been done.
  Then proceeded to receive more phone calls after that*
  This company should be prosecuted and put out of business for the deceptive/evil practices that they used to pray on older people"[16] (emphasis added)

- "This company spams you with fake phone numbers using third party calling providers.
  *They also refuse to cooperate with ceasing the phone calls, and deny all allegations that any of this occurs.*
  Please refer to years of online complaints and lawsuits if you are in doubt after their incompetent staff responds claiming that this review is invalid."[17] (emphasis added)

22. In fact, other consumers have identified calls from one of the telephone numbers Plaintiff was called from as "Telemarketer" calls.[18]

---

[13] Id.

[14] Id.

[15] Id.

[16] https://www.google.com/search?q=%22senior+life+services

[17] Id.

[18] https://us.shouldianswer.net/phone-number/4059607088

23. In response to these calls, Plaintiff Belleville brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF BELLEVILLE'S ALLEGATIONS

24. Plaintiff Belleville registered his cell phone number on the DNC on July 20, 2009.

25. Plaintiff Belleville has owned his cell phone number since November of 1996.

26. Plaintiff Belleville does not have a landline phone in his home.

27. Plaintiff Belleville uses his cell phone number for personal use only as one would use a residential landline telephone number.

28. Plaintiff Belleville's cellular service is registered in his personal name.

29. Plaintiff Belleville pays for his cellular service.

30. Plaintiff Belleville does not and has never used his cell phone number for business purposes or employment.

31. It has never been held out to the public or advertised for business purposes.

32. It has only ever been used as a personal use phone number.

33. Plaintiff Belleville uses his cell phone to communicate with family and friends.

34. Plaintiff Belleville uses his cell phone to deal with household issues like scheduling services.

35. The calls that Plaintiff Belleville received from Defendant Senior Life Services were all received more than 31 days after the Plaintiff registered his cell phone number on the DNC.

36. For approximately three years, Plaintiff has received calls from callers asking for a woman named Phyllis Pearson.

37. Plaintiff Belleville does not know anybody by the name of Phyllis Pearson.

38. Throughout October of 2023, Plaintiff Belleville received unsolicited calls asking for Phyllis Pearson.

39. Plaintiff Belleville told the employees that they were calling the wrong phone number, but the calls continued.

40. On October 23, 2023 at 3:16 PM, Plaintiff Belleville received an unsolicited telemarketing call to his cell phone from Senior Life Services, from 661-399-8000.

41. When Plaintiff answered this call, an employee asked for Phyllis Pearson. Plaintiff told the employee that they were calling the wrong number.

42. The employee hung up before Plaintiff could ask for additional details to confirm who was calling, because no company name was mentioned.

43. On November 4, 2023 at 11:50 AM, Plaintiff received an unsolicited telemarketing call to his cell phone from Senior Life Services, from 405-960-7088.

44. When Plaintiff answered this call, an employee asked for Phyllis Pearson and was calling to provide an insurance quote. Plaintiff told the employee that they were calling the wrong number.

45. Again, the employee hung up before Plaintiff could ask for additional details to confirm who was calling.

46. On November 7, 2023 at 2:17 PM, Plaintiff received an unsolicited telemarketing call to his cell phone from Senior Life Services, from 314-919-9812.

47. When Plaintiff answered this call, an employee asked for Phyllis Pearson and was calling to provide an insurance quote. The employee said that they were calling from what sounded like Senior Life Services.

48. Plaintiff told the employee that they were calling the wrong number and the employee hung up the phone.

49. On November 8, 2023 at 4:06 PM, Plaintiff received an unsolicited telemarketing call to his cell phone from Senior Life Services, from 314-948-9841.

50. When Plaintiff answered this call, an employee asked for Phyllis Pearson and was calling to provide a supplemental insurance quote for Medicaid and Medicare recipients. Plaintiff feigned interest in the call and was told that the company name is Senior Life Services.

51. Plaintiff asked the employee for a company website and was told he could visit theslsway.com, which is the main website for Senior Life Services.

52. Plaintiff Belleville believes that all of the aforementioned calls were from Senior Life Services because the callers were all calling to provide an insurance quote for supplemental Medicaid and Medicare insurance recipients, all began their sales pitch the same way, and because each of the phone numbers when called back produces the same busy signal.

53. Plaintiff Belleville has never done business with Senior Life Services and has never given them consent to call his phone number.

54. As was stated, the calls are intended for an individual that Plaintiff Belleville does not know, and he has communicated this fact to the callers.

55. The unauthorized solicitation telephone calls that Plaintiff Belleville received from or on behalf of Defendant Senior Life Services have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

56. In addition, the calls caused undue stress and frustration since Plaintiff was unable to get Defendant to stop calling his cell phone number.

57. Seeking redress for these injuries, Plaintiff Belleville, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

58. Plaintiff Belleville brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Senior Life Services called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Senior Life Services called more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the Defendant's records reflect the person requested that they stop calling.

59. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Belleville anticipates the need to amend the Class definition following appropriate discovery.

60. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

61. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

   (a) Whether Defendant's conduct violated the TCPA;

   (b) Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

   (c) whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

   (d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

62. **Adequate Representation**: Plaintiff Belleville will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Belleville has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Belleville and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Belleville nor his counsel have any interest adverse to the Classes.

63. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief

appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Belleville. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Belleville and the Do Not Registry Class)**

64. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

65. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

66. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

67. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Belleville and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

68. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Belleville and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

69. As a result of Defendant's conduct as alleged herein, Plaintiff Belleville and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

70. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Belleville and the Internal Do Not Call Class)**

71. Plaintiff repeats and realleges paragraphs 1 through 63 of this Complaint and incorporates them by reference herein.

72. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

15

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

73. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class

without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls/text messages.

74. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

75. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Belleville requests a jury trial.

Respectfully submitted,

**DOUGLAS BELLEVILLE**, individually and on behalf of all others similarly situated,

DATED this 1st day of February, 2024.

By: /s/ Avi R. Kaufman
Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

Stefan Coleman
COLEMAN PLLC
66 West Flagler Street
Suite 900
Miami, FL 33130
(877) 333-9427
law@stefancoleman.com

*Attorneys for Plaintiff and the putative Classes*